**Sims & Hollis *vs* Wallace, &c.**

*Case 85.*                APPEAL FROM THE JESSAMINE CIRCUIT.

                *Sureties.   Attachment.   Priority of Equity.*

*April 25.*      JUDGE MARSHALL delivered the opinion of the Court.

THE third section of the act of 1828, for the relief of securities, &c., (2 *Stat. Laws*, 1442,) gives to a surety, whose principal departs from this Commonwealth, leaving the debt, whether due or not due, unpaid, the right of proceeding by bill against the principal, as an absent defendant, to subject his effects here as an indemnity. There being nothing in the subsequent acts, regulating the proceedings against non-residents, and absent defendants, which gives remedy to a surety, for attaching the effects of his absent principal, before he himself has become a creditor by payment, and before the debt is due, the sufficiency of a bill filed for that purpose, is to be tested, not by the requisition of the subsequent acts, but simply by the requisition of the 3d section of the act of

1828, giving the remedy, and by the then existing laws to which it may be supposed to refer, in authorising the proceeding against the principal, as an absent defendant. Applying this test to the present case, we are not satisfied that even the first bill of Sims & Hollis, filed for the purpose of attaching the *choses* in action of their principal Harris, before they had paid the debt and before it was due, should not be deemed sufficient. It alleges in the words of the 3d section, that he "has departed this Commonwealth," leaving the debt unpaid, and not only shows that he was still absent, but states facts which rendered it probable, that he had departed with a view to a permanent change of residence.

We do not however deem it necessary, to decide this question, in reference to the first bill. For assuming that it makes out a case for the jurisdiction of the Court, we are of opinion, that upon the facts disclosed by the answers, and established by the proof, the complainants are not entitled to relief upon that bill, except by personal decree against their principal, whose debt they discharged in the progress of the suit. And this relief they have obtained by the decree. One of the *choses* in action sought to be subjected by the bill, consisted of a debt due from Thomas J. Brown to Harris. But T. J. Brown was himself the surety of Harris, for a larger amount than the complainants, and for many times more than the sum due from him. The debts for which he was bound, were in fact more pressing than that against the complainants; and large portions of them were first discharged by him. And although there is an attempt on the part of the complainants to show a fraudulent combination between him and Harris, to defeat their claim and protect Harris, and also to show that these debts, or some of them, were paid by means of the funds of Harris, these facts and charges are not satisfactorily established; and it would be manifestly inequitable to enable the complainants to draw from Brown, for their own indemnity, a debt due from him to Harris, when he stood in the same relation to Harris as surety, and creditor, and even for a larger amount than they; under the facts stated in the bill,

One surety of a non-resident debtor cannot by bill and attachment in chancery, draw from another who is surety for such debtor in a distinct demand, any funds which he may owe the non-resident, to the prejudice of such surety.

One of two sureties in distinct demands, cannot attach a fund in the hands of another, by bill, and thus leave him without indemnity.

Brown could retain the debt as against Harris, and therefore against the complainants.

The same principle also applies, though with somewhat less force to the other *choses* in action attached by the first bill. These consisted of numerous notes, and account sdue to Harris, which he had placed in the hands of three constables for collection, and their receipts for which he had shortly before his departure, put into the hands of T. J. Brown. Brown alledges in his answer, and there is some evidence to that effect, that the receipts were delivered to him expressly as an indemnity. But assuming that there was no express declaration of this sort, we are of opinion that it is to be implied. And even if that purpose were not directly contemplated by the parties at the time; still the same circumstances and apprehensions which justified the complainants in attempting to seize these *choses*, for their indemnity, authorized Brown to retain them for his own safety. Equity would not have required him to surrender them to his insolvent principal and it will not compel him to surrender them to the complainants, who claim under that principal, by title commencing subsequent to Brown's actual possession. Brown being the holder of the constables receipts, was impliedly *authorized in the absence of Harris, to receive the moneys collected*, with an equitable right to hold the same for his indemnity. The more pressing the danger, the stronger was this equity of Brown, and the less propriety was there in the Chancellor's intervening in favor of parties, whose claim is no more meritorious, to deprive him of the advantage which his authority over the fund and his possession of the evidences of the claims of Harris, upon the constables, gave him. The debtors themselves, from whom the constables were to make collections, were never made parties. It was the demands against the constable, that were directly attached. But these demands after the deductions to which they are shown to be subject, were not sufficient, in addition to the debt due from Brown to indemnify him for his payments as surety of Harris. And therefore the complainants having no equitable right, to divert these funds from his indemnification, their bill so far as it seeks the appro-

priation of them to their own claim was properly dismissed, even if Brown had filed no bill of attachment against the constables.   It is therefore unnecessary to decide, whether under the circumstances alledged in referrence to the service of process on the two bills, the prior service of Brown's attachment on the constables, should entitle him to precedence, though his bill was filed after process on that of the complainants', had been placed in the hands of the officer, and executed on Brown himself.   These circumstances did not deprive him of his pre-existing equity.

The decree dismissing the bill of Sims & Hollis against Brown and others, so far as it seeks to subject the *choses in action* above mentioned was therefore correct.   But upon the second bill of the complainants, and which was consolidated with the first, we are of opinion that they were entitled to more extensive relief than they have obtained by the decree.   The allegation of this bill (which was filed only two days after the first,) are stronger than those of the first in regard to the departure and absence of Harris, and are, as we think, sufficient under the statute. It seeks to attach and ultimately subject several slaves alledged to be the property of Harris, and also two debts other than those mentioned in the first bill, alledged to be due to him from Messick & Riddle.   These two debts were admitted, Riddle's by his answer, and Missick's by his failure to answer after service of process, and both should therefore have been subjected to the demand of the complainants.   The property of Harris in the slaves was contested by Wallace, his father-in-law, in whose possession they were when the attachment was levied.   Upon the pleading and evidence, we are of opinion that the slave, Amy, was given by Wallace, to his daughter Mrs. Harris, when delivered into her possession, and that she and her children subsequently born, are to be regarded as the property of Harris, and subject to the satisfaction of his debts.

It was, therefore, erroneous to dismiss the second bill of Sims & Hollis, so far as it claimed to subject to their indemnification and ultimate payment, the debts due from

Messick and Riddle to Harris, and the slaves just refer-red to.

Wherefore the decree dismissing the first bill, as to all the parties except Harris is affirmed, and the parties thus dismissed are entitled to their costs in this Court. But the decree dismissing the second bill of Sims and Hollis, as against Messick, Riddle and Wallace is reversed, and the cause is remanded, with directions to render a decree in favor of the complainants upon that bill, as above indicated, after such enquiry as may be necessary to identify the children of Amy, born since the gift to Mrs. Harris.

*Hewitt and Clark and Willis* for appellants: *Harlan & Craddock* for appelees.